IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE GOMEZ, | No. 2:13-CV-0480-GEB-CMK-P |
|     Plaintiff, | |
|   vs. | <u>FINDINGS AND RECOMMENDATION</u> |
| SANDERS, et al., | |
|     Defendants. | |
| _____/ | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendant's motion to dismiss (Doc. 16), plaintiff's motion to amend (Doc. 28), and plaintiff's motion for additional time to file an amended complaint (Doc. 30).

**I.     BACKGROUND**

This action proceeds on plaintiff's first amended complaint (Doc. 12) against two defendants, Sanders and Kimura-Yip.  Plaintiff alleges that the defendants denied him adequate medical care in violation of his Eighth Amendment rights, by removing him from the kidney transplant list with UCSF, due to California Department of Corrections and Rehabilitation's inability to provide adequate care for such treatment, and refusal to transfer him to another

1

transplant program for financial reasons.

## II.     MOTION TO DISMISS

Defendants filed the pending motion to dismiss on the basis that plaintiff fails to state a claim. Defendants argue that plaintiff's allegations are insufficient to state a claim, and alternatively, they are entitled to qualified immunity. Plaintiff did not file an opposition, but rather filed a motion to be allowed to amend his complaint. It appears, therefore, that plaintiff concedes his complaint is insufficient, but contends that the defects are curable.

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

1  reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at
2  1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more
3  than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S.
4  at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability,
5  it 'stops short of the line between possibility and plausibility for entitlement to relief." Id.
6  (quoting Twombly, 550 U.S. at 557).

7  　　　　　In deciding a Rule 12(b)(6) motion, the court generally may not consider materials
8  outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);
9  Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The court may, however, consider: (1)
10 documents whose contents are alleged in or attached to the complaint and whose authenticity no
11 party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,
12 and upon which the complaint necessarily relies, but which are not attached to the complaint, see
13 Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials
14 of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.
15 1994).

16 　　　　　Finally, leave to amend must be granted "[u]nless it is absolutely clear that no
17 amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per
18 curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

19 　　　　　Here, defendants argue that plaintiff fails to plead sufficient facts to allege any
20 violation of his rights under the Eighth Amendment.  Defendants contend that plaintiff's
21 complaint, read in conjunction with the exhibits attached thereto, fails to allege causation to any
22 cognizable injury, and fails to allege the defendants were aware of plaintiff's serious medical
23 needs.  Reading the complaint broadly, as the court must, the court determined that plaintiff
24 alleged the defendants had terminated his placement on any transplant list due to financial
25 constraints, not due to his medical condition.
26 / / /

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

/ / /

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns.  See McGuckin, 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989).  The complete denial of medical attention may constitute deliberate indifference.  See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference.  See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Here, to the extent plaintiff claims that he was denied necessary medical treatment based on budget constraints, not his medical needs, he may have a claim for deliberate indifference.  While defendants contend they are not the ones who made the transplant list decision and any such decision was not made on a financial basis, the court is only addressing the plausible claims as set forth in the complaint, along with any reasonable inference thereto.

Defendants argue that there is no allegation that their actions resulted in any specific injury to plaintiff.  Plaintiff alleges in his complaint that he requested from both defendants to be placed on the transplant list, and that both of the defendants denied that request.  A reasonable inference from that allegation, and the letter from UCSF removing plaintiff from their transplant list, is that plaintiff is in need of a kidney transplant.  Certainly denying a transplant for a patient in need would indicate a continuing injury, resulting in further injury if

5

the organ failed prior to any future transplant. While plaintiff did not specifically make that connection, it is a reasonable inference from the facts alleged. Defendants also contend that the complaint shows the defendants lacked the authority or ability to have plaintiff placed on the transplant list. Rather, they argue, the complaint shows that it was UCSF who made that decision, and the decision was based on the inability of CDCR to provide extensive before and after care to transplant patients that met their standards.

This second argument has some merit. Plaintiff's allegations are fairly conclusory in that he fails to state that the defendants had the ability to put plaintiff on any sort of transplant list. He does indicate, in his motion to file an amended complaint, that Sanders was his treating physician. However, his complaint fails to allege that either of the defendants, whom he had made the request to, had the ability or duty to further his request or fulfill it. He does not allege that treatment was stopped. In fact, he alleges that he continues to be treated through dialysis. Thus, his complaint is insufficient to the extent his somewhat conclusory allegations fail to specify that either defendant actually had the ability to place plaintiff on a transplant list, if his medical condition so required.

Finally, defendants argue that the complaint is insufficient in that plaintiff fails to allege the defendants were aware of plaintiff's serious medical need or excessive risk of harm. Specifically, they argue the complaint lacks sufficient facts showing the refusal to put plaintiff on a transplant list was made with knowledge of the seriousness of plaintiff's condition.

While the court interpreted plaintiff's complaint broadly on screening, the defendants are correct that there are scant facts alleged in the complaint. It was implied, but not expressed, that the defendants were involved in his treatment. Plaintiff indicates more in his motion for leave to file an amended complaint, wherein he specifically states Sanders was his treating physician and had been for several years. Clearly, as plaintiff's treating physician, Sanders would, or should, know about plaintiff's condition and the seriousness thereof, if it was indeed serious. However, that information is not contained in the complaint, but rather in the

motion to file an amended complaint.

The defects in plaintiff's complaint, at least potentially, are subject to cure. It is possible that plaintiff will be ale to plead sufficient facts to state a claim in light of defendants' arguments. Thus, plaintiff should be provided an opportunity to file an amended complaint, as he has requested. However, plaintiff is cautioned that in filing his amended complaint he must name defendants who are responsible for and personally involved in what ever violations he is alleging. In a § 1983 action, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Defendants who are named in any amended complaint, but who were not directly responsible for any alleged violations will be dismissed from this case for failure to state a claim. That includes defendants who are only connected to the alleged violations through the inmate grievance process. Prisoners have no stand-alone due process rights related to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process). Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances. Numerous district courts in this circuit have reached the same conclusion.

See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983).

To the extent defendants contend they are entitled to qualified immunity, the undersigned disagrees at this time. Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If a violation can be made out, the next step is to ask whether the right was clearly established. See id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See id. at 205.

///

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have "reasonably but mistakenly believed that his . . . conduct did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

The first factors in the qualified immunity analysis involve purely legal questions. See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996). The third inquiry involves a legal determination based on a prior factual finding as to the reasonableness of the government official's conduct. See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995). The district court has discretion to determine which of the Saucier factors to analyze first. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

Certainly, obtaining necessary medical procedures is a clearly established right, and the denial of a necessary medical procedure for purely financial reasons would be a violation of that clearly established right. No treating physician could reasonably but mistakenly believe that denying such a procedure would not violate that right. If, as plaintiff has alleged, he was denied being placed on an organ transplant list for purely financial reasons, and the defendants

9

are the ones who so denied him on that basis, no qualified immunity would apply.

### III. CONCLUSION

Because it is possible that the deficiencies identified herein may be cured by amending the complaint, plaintiff should be provided leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, plaintiff is warned that failure to file an amended complaint within the time provided may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Based on the foregoing, the undersigned recommends that defendants' motion to dismiss (Doc. 16) be granted. However, as the defects discussed here are possibly curable, plaintiff should be granted leave to file an amended complaint, and his motion to do so (Docs.

28, 30) should be granted.  Plaintiff should be required to file an amended complaint, in which the defects set forth above are addressed, within 30 days.

        These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 30, 2015

                                      /s/ Craig M. Kellison
                                      **CRAIG M. KELLISON**
                                      UNITED STATES MAGISTRATE JUDGE