1

2

3

4

5

6

7

8           **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  JOSE GOMEZ,                          No. 2:13-CV-0480-TLN-CMK-P

12              Plaintiff,

13       vs.                             <u>FINDINGS AND RECOMMENDATION</u>

14  SANDERS, et al.,

15              Defendants.

16  _____/

17              Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18  42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary judgment (Doc.

19  57).  Plaintiff filed an opposition to the motion (Doc. 73), and defendants filed a reply (Doc. 74).

20                                  **I. BACKGROUND**

21              This action proceeds on plaintiff's second complaint (Doc. 35) against defendants

22  Sanders and Kimura-Yip, as modified by the court's orders granting defendants' motion to

23  dismiss.  (See Docs. 40, 46).[1]  Plaintiff alleges a violation of his Eighth Amendment rights

24  _____

25          [1]      The order granting the motion to dismiss dismissed plaintiff's claim for injunctive
    relief as moot, dismissed plaintiff's claims against the defendants in their official capacity as
    barred by the Eleventh Amendment, and struck irrelevant statements in the second amended
26  complaint as well as the declaration of inmate Brown.  This action therefore continues against the

                                        1

related to his placement on a kidney transplant list. More specifically, he alleges that defendant Sanders refused plaintiff's request to be placed on the kidney transplant list, despite knowing plaintiff's serious medical condition, and refused to do so due to lack of financial resources. He clarifies that defendant Sanders' refusal to place him on the transplant list includes the failure to do what was necessary to get plaintiff on the transplant list, rather than placing him on the list herself. (Am. Compl., Doc. 35 at 4). He further alleges that defendant Kimura-Yip failed to initiate the process necessary for plaintiff to receive a kidney transplant, including refusal to fulfill a request from plaintiff to be placed on the wait list, again citing lack of financial resources, despite her knowledge of plaintiff's serious medical condition. (Am. Compl., Doc. 35 at 5-6).

## II. MOTIONS FOR SUMMARY JUDGMENT

Defendants move for summary judgment on the basis that plaintiff's claim is barred by the statute of limitations, plaintiff failed to properly exhaust his administrative remedies, the defendants were not deliberately indifferent to plaintiff's medical needs, and defendants are entitled to qualified immunity. Plaintiff filed an opposition to the motion. However, the opposition does not comply with Federal Rule of Civil Procedure 56 or Local Rule 260(b). The opposition fails to articulate any objection as to the facts defendants offer as undisputed. Plaintiff's opposition simply consists of over 400 pages of documents, none of which have been authenticated nor does plaintiff explain the relevance of any of the documents.

### A. Defendant's Evidence

Defendants have submitted a statement of undisputed facts in support of the motion for summary judgment. The statement of undisputed facts is supported by declarations from defendant Sanders, defendant Kimura-Yip, Chief Medical Executive Bick, Case Records Supervisor Dickson, and J. Lewis (custodian of records), and plaintiff's deposition. Attached to

defendants in their individual capacities on plaintiff's Eighth Amendment claims.

the declarations are plaintiff's relevant medical records, and the relevant 602 inmate appeals plaintiff filed.

The relevant evidence defendants have submitted is summarized[2] as follows:

- Plaintiff is currently serving a life sentence without the possibility of parole;

- On or around September 15, 2008, plaintiff submitted an inmate appeal, Log No. CMF HS 09000158 (also numbered CMF-06-08-13441), requesting a kidney transplant because he had been removed from the University of California, San Francisco's (UCSF) transplant waiting list;

- On December 19, 2008, the Second Level Review response informed plaintiff that California Department of Corrections and Rehabilitation (CDCR) was working statewide to obtain a new transplant provider;

- The Second Level response also informed plaintiff that California Medical Facility (CMF) still maintained a kidney transplant list and that plaintiff's name was on it;

- On January 13, 2009, plaintiff appealed Log No. CMF HC 09000158 to the Third Level;

- On February 3, 2010, defendant Kimura-Yip drafted the Third Level Review decision, reiterating to plaintiff that CDCR was conducting a statewide search for a new transplant provider, but that CDCR could not compel a non-CDCR entity to provide plaintiff with a kidney transplant or other medical service;

/ / /

---

[2]     This summary is from defendant's separate statement of undisputed facts, and includes those supported by the evidence submitted.  Plaintiff offers no objections to any of the facts defendants purport to be undisputed.

- Defendant Kimura-Yip partially granted appeal Log No. CMF HC 0900158, directing CMF's medical staff to provide plaintiff with documentation of his current health status, his transplant eligibility, and to provide an updated health care services request to CMF's Medical Authorization Review Committee (MAR) for re-evaluation for an outside specialty referral;

- Defendant Kimura-Yip did not deny plaintiff's request for a kidney transplant for financial reasons;

- Defendant Kimura-Yip did not have any role in the kidney transplant process;

- Defendant Kimura-Yip is not a physician and has no training in treating or diagnosing inmate-patients, she did not offer her own medical judgment or second-guess any physician who treated plaintiff, and she relied on a registered nurse in the medical review portion of plaintiff's appeal;

- Defendant Kimura-Yip, as a non-physician, was not qualified to assess plaintiff's candidacy for a kidney transplant or make transplant eligibility decisions, which would have been the purview of either CDCR or Loma Linda University;

- Defendant Sanders met with plaintiff in September and October 2011, and confirmed plaintiff's evaluation package had been sent to HCRS;

- Defendant Sanders did not meet with plaintiff on December 16, 2011[3] as alleged in the complaint;

- On December 17, 2012, defendant Sanders assisted plaintiff in completing some of his kidney transplant evaluation package;

---

[3] As set forth below, this may be a contested fact.

1 • The evaluation package also required additional psychological and medical

2 assessments, which defendant Sanders did not participate in;

3 • On March 25, 2013, defendant Sanders submitted plaintiff's completed

4 transplant evaluation package to CMF's MAR;

5 • Defendant Sanders was not involved in the processing, adjudication or

6 approval of plaintiff's evaluation package, done by CMF's MAR, CDCR's

7 HCRS, or Loma Linda University.

8 (See Defendant's Separate Statement, Doc. 57-2).

9 **B. Plaintiff's Evidence**

10 Plaintiff did not file a separate statement of disputed facts. His opposition

11 consists of a table of contents as to the exhibits he submits and no discussion or argument as to

12 the facts or defendants' motion for summary judgment. He fails to make any connection between

13 the documents he submits as evidence and the allegations in his complaint.

14 The documents plaintiff provides include primarily non-relevant medical records,

15 communication between himself and the Prison Law Office, copies of his inmate grievances, and

16 some discovery responses. There are no declarations by plaintiff or anyone else in support of his

17 contentions. Most of the medical records are dated post 2013, and are therefore not relevant to

18 the claim that plaintiff was denied placement on the kidney transplant list prior to 2013, when the

19 complaint was filed. The relevant documents are summarized as follows:

20 • Inmate grievance CMF HC 12036834, dated June 26, 2012, and the

21 institution responses thereto (addressing plaintiff's placement on kidney

22 transplant list);

23 • Inmate grievance CHCF HC 15003935, dated August 25, 2015, and the

24 institution responses thereto (addressing disagreement with medical

25 treatment and referral regarding peripheral vascular disease);

26 • Inmate grievance CMF 06-2612 and institution responses thereto, dated

December 4, 2006 (addressing "blood clog");

- Inmate grievance CMF HC 12037156 responses, third level dated June 14, 2013 (addressing disagreement with treatment regarding eye drops; request for removing Dr. Sanders as primary care provider);
- Letter from Prison Health Care Services dated August 23, 2010, explaining that efforts to obtain transplant services were on-going, that plaintiff was being evaluated for transplant suitability, and his medical condition was being monitored (Doc. 73, at 102);
- Letter from the Prison Law Office dated October 29, 2010, indicting the results of plaintiff's September 14, 2010 liver biopsy showed grade 1, stage 1 liver disease, which is considered an early stage of the disease;
- Medical records, dated December 16, 2011 (regarding abdominal pain);
- Inmate grievance CMF HC 12036137 and institution response, dated January 30, 2012 (requesting morphine for carpel tunnel syndrome pain);
- Letter from UCSF dated October 15, 2013, explaining cancellation of services to CDCR and removing plaintiff from UCSF transplant list.

(Plaintiff's objections, Doc. 73).

## C. Undisputed Facts

Plaintiff fails to specifically dispute any of the facts as set forth by the defendants. The documents included in plaintiff's opposition are some of the same documents defendants provide, including the inmate grievances. The only disputed document/fact the undersigned can find is whether Dr. Sanders saw plaintiff on December 16, 2011. Defendant Sanders contends she did not see plaintiff on December 16, 2011. In support of this statement in her declaration, defendant Sanders offers a medical ducat issued for plaintiff for a December 16, 2011 appointment. The ducat, issued by Dr. Bick, indicates it was a pass to "6ACC 84-99." The reason given was "Sanders, MD." There is no explanation in Dr. Sanders' declaration as to how

this documents supports her statement that she did not see plaintiff on that day. However, the defendants have provided a copy of an inmate grievance (Log. No. CMF HC 11035916) for which plaintiff was seen on December 16, 2011, by a registered dietitian regarding an onion in his PM Nourishment Bag. (Decl. of Lewis, Doc. 57-6, Ex. C). In contrast, there are medical records plaintiff provides in his opposition which appear to indicate that plaintiff did see Dr. Sanders on that date for abdominal pain. (Opp., Doc. 73 at 111-12, 228). However, based on the reminder of the discussion herein, whether plaintiff saw defendant Sanders on December 16, 2011 is not essential to resolve the issues in this case. The undersigned finds the remainder of the facts set forth above are undisputed.

### E.  Standard for Summary Judgment

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to

establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof

is imposed." <u>Anderson</u>, 477 U.S. at 251.

### III.  **DISCUSSION**

Plaintiff alleges the defendants violated his Eighth Amendment rights by refusing to place him on kidney transplant list for financial reason in February 2010 and December 2011.

### A.  **Statute of Limitations**

Defendants' first argument is that plaintiff's claim against defendant Kimura-Yip is barred by the statute of limitations.  Defendants argue that plaintiff, who is serving a life sentence without the possibility of parole, is not entitled to tolling pursuant to California Civil Procedure Code § 352.1(a)  and had only two years in which to file this action.  Plaintiff filed this action more than two years after his claim accrued.

For claims brought under 42 U.S.C. § 1983, the applicable statute of limitations is California's statute of limitations for personal injury actions.  <u>See</u> <u>Wallace v. Kato</u>, 549 U.S. 384, 387-88 (2007); <u>Wilson v. Garcia</u>, 471 U.S. 261, 280 (1985);  <u>Karim-Panahi v. Los Angeles Police Dep't</u>, 839 F.2d 621, 627 (9th Cir. 1988).  In California, there is a two-year statute of limitations in § 1983 cases.  <u>See</u> Cal. Civ. Proc. Code § 335.1; <u>Maldonado v. Harris</u>, 370 F.3d 945, 954 (9th Cir. 2004);  <u>Jones v. Blanas</u>, 393 F.3d 918, 927 (9th Cir. 2004) ("[f]or actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions.").  State tolling statutes also apply to § 1983 actions.  <u>See</u> <u>Elliott v. City of Union City</u>, 25 F.3d 800, 802 (citing <u>Hardin v. Straub</u>, 490 U.S. 536, 543-44 (1998))

California Civil Procedure Code § 352.1(a) provides tolling of the statute of limitations for two years when the plaintiff, "at the time the cause of action accrued, [is] imprisoned on a criminal charge, or in execution under sentence of a criminal court for a term of less than for life."  The Ninth Circuit has held that section 352.1(a) applies to prisoners serving life sentences *with* the possibility of parole.  <u>See</u> <u>Martinez v. Gomez</u>, 137 F.3d 1124 (9th Cir. 1998). However, prisoners serving a life sentence *without* the possibility of parole do not qualify for this additional tolling as they are not serving a "term less than for life."  <u>See</u> <u>Brooks v. Mercy</u>

1 | Hospital, 204 Cal. Rptr.3d 289, 291-92 (Cal. App. 2016) (citing Grasso v. McDonough Power

2 | Equipment, Inc., 70 Cal. Rptr. 458, 460-61 (Cal. Ct. App. 1968)) (holding § 352.1 tolling

3 | provision is applicable to prisoners serving a sentence of life with the possibility of parole; but

4 | the statutory language "for a term less than for life" excludes those without the possibility of

5 | parole).

6 |       Here, plaintiff was sentenced to a term of life without the possibility of parole.

7 | (See Abstract of Judgment, Decl. of Dickson, Doc. 57-4, Ex A). As plaintiff is not serving a

8 | term less than for life, section 352.1(a) does not apply, and the applicable statute of limitation is

9 | two years.[4] Plaintiff's claim against defendant Kimura-Yip arose from the Director's Level

10 | Decision defendant Kimura-Yip authored on February 3, 2010, wherein plaintiff's appeal as to

11 | his request for placement on the kidney transplant list was partially granted. As the claim arose,

12 | at the latest, on the date of that decision, plaintiff had two years thereafter to file his complaint, or

13 | until February 3, 2012. Plaintiff initiated this action with a complaint signed March 2, 2013, and

14 | filed with the court on March 8, 2013. Thus, his complaint against defendant Kimura-Yip was

15 | filed beyond the statute of limitations. Defendant Kimura-Yip's motion for summary judgment

16 | should be granted.

17 | **B. Exhaustion**

18 |       Next, defendants contend that plaintiff failed to properly exhaust his

19 | administrative remedies prior to filing this action. Specifically, defendants argue plaintiff failed

20 | to mention defendants' misconduct relating to the denials of his requests for kidney transplant.

21 | Instead, the two inmate appeals which best address plaintiff's kidney transplant issue have

22 | nothing to do with any alleged misconduct by the defendants. Defendants contend two inmate

23 |

---

24 |     [4] The applicable statute of limitations may be further tolled while a prisoner completes the exhaustion process mandated by the Prison Litigation Reform Act ("PLRA"). See

25 | Brown v. Valoff, 422 F.3d 926, 942-43 (9th Cir. 2005). However, in this case, plaintiff's claim against defendant Kimura-Yip arose from the inmate appeals decision. Thus, there was no

26 | additional time required for plaintiff to complete the exhaustion process.

appeals raised issues relating to plaintiff's request for a kidney transplant, Log No. CMF HC 09000158 (which was also assigned a log number CMF-06-08-13441) and Log No. CMF HC 12036834. However, neither appeal mentioned the defendants by name or any of the alleged misconduct raised in the complaint. Rather they simply requested placement on the transplant list and indicated he should have already been on the transplant list.

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). This requirement is mandatory regardless of the relief sought. See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)). Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). The Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted.

The Supreme Court also held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits. 548 U.S. 81, 89-96 (2006). Thus, exhaustion requires compliance with "deadlines and other critical procedural rules." Id. at 90. Partial compliance is not enough. See id. Substantively, the prisoner must submit a grievance which affords prison officials a full and fair opportunity to address the prisoner's claims. See id. at 90, 93. The Supreme Court noted that one of the results of proper exhaustion is to reduce the

quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court." Id. at 94.

A prison inmate in California satisfies the administrative exhaustion requirement by following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of Regulations. In California, inmates "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The inmate must submit their appeal on the proper form, and is required to identify the staff member(s) involved as well as describing their involvement in the issue. See Cal. Code Regs. tit. 15, § 3084.2(a). These regulations require the prisoner to proceed through three levels of appeal. See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7. A decision at the third formal level, which is also referred to as the director's level, is not appealable and concludes a prisoner's departmental administrative remedy. See id. Departmental appeals coordinators may reject a prisoner's administrative appeal for a number of reasons, including untimeliness, filing excessive appeals, use of improper language, failure to attach supporting documents, and failure to follow proper procedures. See Cal. Code Regs. tit. 15, §§ 3084.6(b). If an appeal is rejected, the inmate is to be provided clear instructions how to cure the defects therein. See Cal. Code Regs. tit. 15, §§ 3084.5(b), 3084.6(a). Group appeals are permitted on the proper form with each inmate clearly identified, and signed by each member of the group. See Cal. Code Regs. tit 15, § 3084.2(h).

In certain circumstances, the regulations make it impossible for the inmate to pursue a grievance through the entire grievance process. See Brown v. Valoff, 422 F.3d 926, 939 n. 11 (9th Cir. 2005). Where a claim contained in an inmate's grievance is characterized by prison officials as a "staff complaint" and processed through a separate confidential process, prison officials lose any authority to act on the subject of the grievance. See id. at 937 (citing Booth, 532 U.S. at 736 n. 4). Thus, the claim is exhausted when it is characterized as a "staff

12

complaint." See id. at 940. If there are separate claims in the same grievance for which further administrative review could provide relief, prison regulations require that the prisoner be notified that such claims must be appealed separately. See id. at 939. The court may presume that the absence of such a notice indicates that the grievance did not present any claims which could be appealed separate from the confidential "staff complaint" process. See id. In addition, "a prisoner exhausts 'such administrative remedies as are available,' . . . despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." Reyes v. Smith, 810 F.3d 654, 658 (9th Cir. 2016) (citing 42 U.S.C. § 1997e(a)).

Here, there are two main inmate grievances relevant to plaintiff's claims. In the first grievance, Log No. CMF HC 09000158 (or CMF-06-08-13441), plaintiff indicates that he had been on the kidney transplant list at UCSF for years, but had been notified that he had been removed from the list "based on the lack of appropriate medical care necessary for kidney transplants at the CMF." (See Declaration of Lewis, Do. 57-6, Ex. B). He states that he had been informed by UCSF that he would be transferred to a different, equal list at a different venue. He further states that he had learned no transplants had occurred in over 20 years for CDCR inmates, even for dialysis patients who had been on the transplant list for over five years. "Such inaction is a violation of the ADA and the 8th Amendment's prohibition of cruel and unusual punishments of prisoners . . . " This grievance was signed on September 15, 2008. It was partially granted at the first level, granted at the second level, and partially granted at the third level. The third level decision was issued on February 3, 2010.

In the second grievance, Log No. CMF HC 12036834, plaintiff stated, "I have been informed that I am not on any transplant waiting list. I should be on a kidney transplant waiting [list] at Loma Linda Hospital." (See Declaration of Lewis, Do. 57-6, Ex. G). He requested "[t]o be placed on a kidney transplant waiting list in one of California's hospitals, and given preference due to delay." Plaintiff signed this grievance on June 26, 2012. The grievance

1  was granted in part at the first and second levels, but denied at the third level. The third level

2  denial was issued on April 11, 2013.

3      To the extent plaintiff contends Log No. CMF HC 12037156 is relevant, the

4  undersigned does not agree. In that grievance, plaintiff does not raise the kidney transplant as an

5  issue but rather requested defendant Sanders be removed as his primary care provider based on

6  general disagreements in treatment. Therefore, although defendant Sanders is named in that

7  grievance, it does not address the issue of his request for a kidney transplant.

8      There are several defects in plaintiff's inmate grievance. As discussed above,

9  claims arising from his first inmate grievance are barred by the statute of limitations. As for the

10  second grievance, the final decision was issued on April 11, 2013. Thus, any claims related to

11  that grievance were not exhausted as of the date this action was filed, March 8, 2013. As

12  plaintiff filed this action a month before he exhausted his administrative remedies, any claims

13  raised therein were unexhausted at the time this action was filed.

14      Thus, the undersigned finds plaintiff failed to properly exhaust his claim prior to

15  bringing this action, and the motion for summary judgment should be granted.[5]

16      **C. Deliberate Indifference**

17      Plaintiff claims the defendants were deliberately indifferent to his medical needs

18  by refusing to place him on the kidney transplant lists for financial reasons regardless of his

19  medical needs. Defendants move for summary judgment on the merits of plaintiff's claims,

20  contending there was no deliberate indifference.

21  ───────────

22      [5]  Even if the court were to evaluate the sufficiency of the inmate grievances to
   exhaust plaintiff's claim, the undersigned would find the claims unexhausted. As the defense
23  argues, plaintiff alleges no misconduct in his grievances. While he contends the delay in
   obtaining the transplant is a violation of his Eighth Amendment rights, the claims raised in this
24  action relate to decisions being made based on financial considerations not based on his medical
   needs. The misconduct alleged in the complaint, failing to place plaintiff on a kidney transplant
25  list for financial reasons, are not raised in the grievances. The grievances filed did not allege any
   wrongdoing, but requested he be placed back on a transplant list. Thus, the grievances failed to
26  provide " corrections officials time and opportunity to address complaints internally before
   allowing the initiation of a federal case." See Woodford, 548 U.S. at 93.

Defendant Sanders argues the undisputed facts show that she did not take any affirmative action that resulted in plaintiff being denied a kidney transplant. Defendant Sanders contends she was not personally involved in the decision-making process to determine whether plaintiff received a kidney transplant. Her only involvement in the process was assisting plaintiff in completing a portion of his kidney transplant evaluation package and making sure it was submitted to the Medical Authorization Review (MAR) Committee.

Defendant Kimura-Yip contends she was not deliberately indifferent as she was not aware of any risk to plaintiff's kidney health. Defendant Kimura-Yip argues she is a non-medical prison official, and her only involvement in plaintiff's medical care was drafting a Third-Level Review decision for one of plaintiff's inmate appeals.

Plaintiff alleged in his complaint that defendant Kimura-Yip failed to initiate the process necessary for plaintiff to receive a kidney transplant, denying his January 2009 request to be placed on the waiting list in February 2010. He alleges defendant Sanders refused his request to be placed on the kidney transplant list in December 2011. He contends both defendants denied his request for no other reason but to spare the state the expense of a transplant, citing a lack of financial resources.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious

15

such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

/ / /

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

As set forth above, plaintiff was previously approved for a kidney transplant, and was on the transplant list for UCSF. In 2007, UCSF ended the contractual relationship it had with CDCR for providing inmates with organ transplants. Between 2007 and 2010, CDCR was working statewide to obtain a new provider for organ transplants. In 2010, CDCR was making arraignments to contract with Loma Linda University for such services. In preparation, the prison ordered its medical staff to assist inmates in completing transplant evaluation packages that would be reviewed by CMF's MAR. MAR approval of a transplant evaluation package was then reviewed by CDCR's Health Care Review Subcommittee (HCRS). IF HCRS approved an inmate's transplant evaluation package, the evaluation package would be forwarded to Loma Linda University, who would then conduct its own review. Loma Linda University had the ultimate power to grant or deny any inmate-patient's organ transplant surgery.

In 2010, plaintiff's transplant evaluation package was completed. However, Loma Linda University required additional information, and the evaluation package had to be updated. Plaintiff's evaluation package was resubmitted to CMF's MAR with the additional documentation required by Loma Linda University. CMF's MAR approved plaintiff's evaluation package in September 2011, and forwarded it to CDCR's HCRS. HCRS was required to wait until a contract between CDCR and Loma Linda University was finalized. In December 2012, HCRS requested plaintiff's evaluation package be re-submitted.

Defendant Sanders met with plaintiff in September and October 2011, and confirmed plaintiff's evaluation package had been sent to HCRS. In December 2012, defendant Sanders assisted plaintiff in completing the kidney transplant evaluation package, as requested by

HCRS. She assisted plaintiff with a portion of the package, which then required additional psychological and medical assessments, which defendant Sanders was not involved. Then in March 2013, defendant Sanders submitted plaintiff's completed transplant evaluation package to CMF's MAR. She had no further role in how the evaluation package was processed, adjudicated, or approved. In March 2013, the MAR approved plaintiff's package, and forwarded the package to CDCR's HCRS. In May 2013, HCRS approved plaintiff's package, referring plaintiff to Loma Linda University for a kidney transplant. However, in December 2014, Loma Linda University denied plaintiff a kidney transplant after its own independent review of plaintiff's medical history.

Defendant Sanders has provided undisputed evidence that she was not personally responsible for any decision as to whether plaintiff was placed on a kidney transplant list. In addition, she has met her burden to show she was not deliberately indifferent to plaintiff's medical needs. Rather, she assisted plaintiff by completing the evaluation and submitting it to the MAR for processing and evaluation. The burden then shifts to plaintiff to show defendant Sanders was somehow deliberately indifferent to his medical needs. Plaintiff alleged that defendant Sanders refused his requests to be placed on the kidney transplant list. However, he submits no evidence to support any allegation that defendant Sanders refused to assist plaintiff in completing his transplant evaluation, or that she was personally responsible for the determination as to whether plaintiff was approved for a kidney transplant. Rather, the undisputed evidenced shows that defendant Sanders did assist plaintiff with completing the necessary documentation to submit for approval. There is no evidence that defendant Sanders was deliberately indifferent to plaintiff's medical needs by refusing to assist plaintiff, or was personally responsible for making the decision to not place plaintiff on the transplant list. Thus, defendant's motion for summary judgment should be granted.

As to defendant Kimura-Yip, her involvement in plaintiff's medical care and kidney transplant was limited to drafting a Third-Level Review decision for one of plaintiff's

inmate appeals.  Specifically, as set forth above, plaintiff filed inmate appeal log number CMF-06-08-13441 on September 15, 2008.  In that appeal, plaintiff attached the letter he received from UCSF informing plaintiff that UCSF had declined to accept inmates in the transplant program due to necessary medical care related to transplant surgery.  In the inmate appeal, plaintiff explained he had been on the transplant list at UCSF for years, and now that he had been removed from the list, he requested a kidney transplant at state expense.  This inmate appeal was partially granted at the first level, to the extent that plaintiff was directed to submit a Health Care Services Request form to his provider requesting the kidney transplant.  At the second level, plaintiff's inmate appeal was granted to the extent that plaintiff was informed that CDCR was working to obtain resources necessary to provide inmates with transplant services, and that plaintiff was included on the CMF kidney transplant list.  On February 3, 2010, defendant Kimura-Yip authored the third level decision partially granting plaintiff's inmate appeal.  The third level decision partially granted plaintiff's inmate appeal to the extent that CMF health care staff was ordered to provide documentation as to plaintiff's health status and confirm he meets the criteria to be referred for kidney transplant consideration, and if so staff was directed to provide an updated request for services to the MAR for review.  In addition, plaintiff was informed:

> In 2007, the UCSF medical center ended the contractual relation with CDCR.  While CDCR has continued to seek a suitable alternative program, this goal has not been achieved.  However, it remains the responsibility of correctional providers to refer potential transplant candidates, and to insure that cost will not be a deterrent, recognizing the ultimate determination of eligibility and final selection are the responsibility of the transplant team.  Further, CDCR cannot compel a non-CDCR agency to provide this, or any other medical service to a patient-inmate.

(Dec. of Lewis, Doc. 57-6, Ex. B).

To the extent plaintiff contends defendant Kimura-Yip refused to initiate the transplant process and refused plaintiff's request to be placed on the kidney transplant wait list, these allegations are belied by the evidence defendants have provided.  Instead, the evidence

supports that plaintiff was on the CMF kidney transplant list, that defendant Kimura-Yip specifically informed plaintiff that cost was not a deterrent, and any delay in obtaining the transplant was due to non-CDCR agency decisions (such as UCSF terminating the transplant contract with CDCR). The burden then shifts to plaintiff to produce evidence to support his allegation that defendant Kimura-Yip denied is request and that her actions were based on a lack of financial resources. Plaintiff fails to meet that burden. Thus, defendants' motion for summary judgment should be granted.

## C. Qualified Immunity

Alternatively, defendants argue that they should be entitled to qualified immunity as there was no violation of plaintiff's constitutional rights. Plaintiff fails to address this in his opposition.

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If a violation can be made out, the next step is to ask whether the right was clearly established. See id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See

id. at 205.

The first factors in the qualified immunity analysis involve purely legal questions. See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996). The third inquiry involves a legal determination based on a prior factual finding as to the reasonableness of the government official's conduct. See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995). The district court has discretion to determine which of the Saucier factors to analyze first. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

Here, as set forth above, the undersigned finds the undisputed evidence shows no violation of plaintiff's constitutional rights. As such, the defendants would be entitled to qualified immunity. The undisputed evidence shows the defendants had a limited role in the determination as to whether plaintiff was placed on a kidney transplant list. While plaintiff alleged in his complaint that the defendants denied him placement on the transplant list for financial reasons, that allegation is belied by the undisputed evidence as set forth above. Thus, there was constitutional violation and defendants' request for qualified immunity is unnecessary.

### IV. CONCLUSION

The undersigned finds no genuine issue as to any material fact. The undisputed facts show the defendants did not refuse to place plaintiff on a kidney transplant list. Rather, Dr. Sanders assisted plaintiff in completing the transplant evaluation forms, and defendant Kimura-Yip did not refuse plaintiff's request but partially granted his request directing further action be taken by the medical staff to complete plaintiff's transplant evaluation. In addition, the undersigned finds the claims against defendant Kimura-Yip are barred by the statute of limitations, and those against defendant Sanders are unexhausted.

/ / /

/ / /

1         Based on the foregoing, the undersigned recommends that:

2         1.       Defendants' motion for summary judgment (Doc. 57) be granted;

3         2.       Judgment be entered in favor of the defendants; and

4         3.       The Clerk of the Court be directed to enter judgment and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  July 2, 2018

                                        **CRAIG M. KELLISON**
                                        UNITED STATES MAGISTRATE JUDGE